**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ZYMEFLOW, INC.,**<br><br>***Plaintiff,***<br><br>**V.**<br><br>**SOLVN ENERGY SERVICES, INC., THOMAS P. MCQUEARY, AND JACQUELINE NUNN**<br><br>***Defendant*** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:26-cv-6663** |

**ZYMEFLOW, INC.'S ORIGINAL COMPLAINT**

Plaintiff ZymeFlow, Inc. ("ZymeFlow" or "Plaintiff") files this Complaint against Defendants Solvn Energy Services, Inc. ("Solvn"), Thomas P. McQueary ("McQueary"), and Jacqueline Nunn ("Nunn"; Solvn, McQueary, and Nunn are, together, "Defendants").

## I. INTRODUCTION

ZymeFlow is an industrial services contractor that provides chemical decontamination cleaning, a broad spectrum of engineered chemistry products, and services for the specialized application of those products in the United States and internationally, principally in the energy industry. ZymeFlow is an industry leader and innovator in the decontamination industry, with customers in at least 30 states in the United States and approximately 55 foreign countries.

This action is brought to halt an ongoing, unlawful scheme of retribution involving Defendant McQueary, ZymeFlow's former CEO and founder who was fired by its board, Defendant Nunn, ZymeFlow's former COO, and their newly-created entity, Defendant Solvn, to: (i) misappropriate ZymeFlow's trade secrets entitled to protection under federal and Texas law; (ii) interfere with ZymeFlow's thirty-year comprehensive contract and business relationship with a key supplier, United Laboratories, Inc. ("United Laboratories"); and (iii) compete improperly

with ZymeFlow by using trade secrets misappropriated from ZymeFlow and hiring (and attempting to hire) former and current ZymeFlow employees still subject to confidentiality and non-compete restrictions.

Defendant Solvn is a Texas corporation created in 2026 by Defendants McQueary and Nunn. They created Solvn to compete directly with ZymeFlow in the chemical decontamination services industry using ZymeFlow's trade secrets and protected source products. Solvn's website makes this clear—it describes Solvn's expertise in its products and services by referring to what are actually ZymeFlow's protected source products and proprietary information and processes, including those developed with United Laboratories and through thirty years of experience in the application of chemical decontaminants in the field:




In addition to copying ZymeFlow's business and using its trade secrets, Defendants (with Solvn acting at the direction of McQueary and Nunn) have solicited and hired several former ZymeFlow employees who still are subject to confidentiality, non-compete, and other obligations owed to ZymeFlow, and, on information and belief, are also soliciting ZymeFlow customers.

Indeed, in response to a LinkedIn announcement by Sabnesh Vazhipokil, a former ZymeFlow affiliate contractor, that he was joining Solvn, one industry colleague commented that, as is McQueary and Nunn's apparent intent, Solvn was "getting the band back together":




As discussed below, from their prior work at ZymeFlow, McQueary and Nunn have full knowledge of the extensive measures ZymeFlow has taken to keep its confidential information protected as trade secrets. These efforts include confidentiality and non-disclosure agreements with employees, suppliers, and customers, as well as restrictive covenants with officers and employees. Indeed, the actions of McQueary and Nunn individually and through their control or direction of Solvn directly violate valid and enforceable restrictive covenants they agreed to that prohibit their competitive efforts with Solvn, their solicitation of ZymeFlow employees, and their (mis)use of ZymeFlow confidential information.

McQueary and Nunn also know that ZymeFlow derives independent economic value from its confidential and trade secret information not being readily ascertainable through proper means. In at least two lawsuits involving ZymeFlow's corporate predecessor, McQueary and Nunn provided sworn testimony and verifications about the trade secrets to claim protection under the Texas Uniform Trade Secrets Act.

This suit is regrettably necessary to remedy Defendants' improper conduct. ZymeFlow is entitled to equitable relief to prevent irreparable harm and to damages for the harm Defendants have already caused.

## II. PARTIES

1. Plaintiff ZymeFlow, Inc. is a Delaware corporation with its principal place of business in Texas.

2. Defendant Solvn Energy Services, Inc. is a Texas corporation with its principal place of business in Texas. Solvn may be served by serving its registered agent, Texan Registered Agent LLC, 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

3. Defendant Thomas P. McQueary is an individual who may be served at his residence, which is believed to be 3735 Westerman Street, Houston, Texas 77005-1135, or at his principal place of business.

4. Defendant Jacqueline Nunn is an individual who may be served at her residence, which is believed to be 2957 Gibbons Hill Lane, League City, Texas 77573, or at her principal place of business.

## III. JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff's claims against Defendants arise, in part, under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and raise questions of federal law. Plaintiff's remaining claims likewise fall within this Court's supplemental jurisdiction (28 U.S.C. § 1367) because they are so related to the federal claim that they form part of the same case or controversy.

6. Defendants are subject to the jurisdiction of this Court because each is a resident of Texas. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

# IV. FACTUAL ALLEGATIONS

## A. THE BUSINESS OF ZYMEFLOW, ITS CORPORATE ORIGINS, AND THE UNITED LABORATORIES CONTRACT

7. ZymeFlow is an industrial services contractor that provides chemical decontamination cleaning, a broad spectrum of engineered chemistry products, and services for the specialized application of those products in the United States and internationally, principally in the energy industry. ZymeFlow's competitive advantage is its specialized ZymeFlow chemical products and the knowledge of how to apply those products in a variety of contexts, all of which took years of service in the refining and petrochemical industry to perfect. ZymeFlow provides these services both in interstate commerce in the United States and internationally. ZymeFlow is seen by its customers as a leader in this industry.

8. The origins of what is now ZymeFlow began in approximately 1996 when United Laboratories, a Chicago area-based developer and supplier of a wide range of industrial chemical products directly or indirectly created an affiliate, United Laboratories International, Inc. ("ULI"). United Laboratories created ULI to pursue opportunities in all facets of the industrial decontamination business, including oil refineries, chemical and petrochemical plans, paper mills, and power plants.

9. As part of the creation of ULI, United Laboratories and ULI entered into a Supply and Service Agreement in which ULI agreed to purchase certain products, including a decontaminant product called "United 657 Zyme-Flow™," exclusively from United Laboratories.[1] The Supply and Service Agreement was amended in 2002 to expand the list of "Products" that are

[1] The 1996 Supply and Service Agreement between United Laboratories and ULI is attached hereto as Exhibit 1. The amendments to that agreement from 2001, 2002, and 2006 are also attached hereto as Exhibits 2, 3, and 4, respectively.

subject to the agreement. The agreement also addresses ownership of the formula for the Products, which are as follows:

| **Products** | **Formula Ownership** |
|---|---|
| United 250 Dirty Fighter | United Laboratories |
| United 657 Zyme Flow | United Laboratories |
| United 657 Zyme Flow Concentrate | United Laboratories |
| United 664 Tar Zyme | ULI |
| United 665 Safe X | ULI |
| United 667 Rezyd X | ULI |
| United 668 Crude Oil Treatment | ULI |
| United 669 Natural Gas Treatment | ULI |
| United F669 Sweet Zyme | ULI |
| United F620 Zyme Ox | ULI |
| United F621 Super Tank Zyme | ULI |
| United F628 RSR Refinery Scale Rem | ULI |
| United F987 T.E.R.C. Refinery Cleaner | United Laboratories |
| United F987TK T.E.R.C. Refinery Cleaner | United Laboratories |
| United K29 Sur Sol-X | ULI |
| United K30 Poly Sol-X | ULI |
| United Z30 Petrochemical Cleaner | ULI |
| Heavy Oil Penetrant | ULI |
| Desalter Decontaminator | ULI |

10. In 2006, a company McQueary controlled or managed, TriStar Global Energy Solutions, Inc., directly or indirectly purchased ULI. As part of the acquisition, ULI obtained a critical and consequential amendment to the United Laboratory–ULI Supply and Service Agreement. The amendment, attached as Exhibit 4, added a Restricted Activities provision that prevented United Laboratories from directly or indirectly selling "Products or competing products" anywhere in the world to (a) any existing customer of ULI, or (b) to "oil refineries, chemical plants, petrochemical plants, gas plants, paper mills, pulp mills, and power plants," together defined as "'Heritage Customers." The United Laboratory–ULI (now ZymeFlow) Supply and Service Agreement, including all amendments thereto, shall hereinafter be referred to as the "Supply and Service Agreement."

11. ULI obtained a significant competitive advantage with the "Restricted Activities" provision in the Supply and Service Agreement. United Laboratories could not sell its "Products or competing products" to ULI's customers directly or to ULI's competitors to sell or use in providing services as an indirect sale.

12. Building on those important contract rights and with Products from United Laboratories as its cornerstone, ULI continued to develop and refine in a confidential and proprietary manner (i) formulas for other decontamination products it developed, (ii) an experiential knowledge base from work and services for its customers, (iii) processes for the application of Products in different contexts, and (iv) the identity of customers and their requirements for their unique applications, all of which is proprietary and confidential information and is used to obtain and retain sales and perform the work for customers (together, "Confidential Information").

13. In 2023, ULI merged into another entity and was renamed ZymeFlow, Inc. Plaintiff ZymeFlow is the corporate successor-in-interest to ULI and its interests and rights, which includes the Supply and Service Agreement with United Laboratories. The Supply and Service Agreement remains in effect. McQueary's direct or indirect ownership interests in ULI were exchanged for ownership interests in what is now the corporate parent of ZymeFlow. As discussed below, Defendants McQueary and Nunn both entered into an Employment Agreement and a Restrictive Covenant with ZymeFlow's corporate predecessors. Per the agreements, McQueary served as the Chief Executive Officer of ZymeFlow and Nunn as its Chief Operating Officer.

## B. ZYMEFLOW AND ITS PREDECESSOR'S EFFORTS TO MAINTAIN THE SECRECY OF ITS CONFIDENTIAL INFORMATION

14. ZymeFlow's business of hydrocarbon cleaning and decontamination products and services is highly competitive. In the ordinary course of its business, ZymeFlow develops, uses,

and maintains its Confidential Information, which are protected trade secrets that derive independent economic value, actual or potential, from not being generally known. ZymeFlow has made and continues to make significant investments in developing and protecting this Confidential Information, which provides advantages to ZymeFlow over its competitors. ZymeFlow (and its corporate predecessors) use a full array of mechanisms to protect and keep secret the Confidential Information, including technology restrictions, restrictive covenants in contracts, and litigation under trade secret protection statutes.

15. ZymeFlow's technological efforts to protect its Confidential Information include requiring passwords and credentials to access its computer systems that contain its Confidential Information. And access to Confidential Information is limited to only those ZymeFlow representatives who need it to further the company's interests.

16. ZymeFlow also required and continues to require its employees and independent contractors to execute enforceable agreements with measured and enforceable non-compete, non-disclosure, and non-solicitation restrictive covenants to protect ZymeFlow's interests and the secrecy of its Confidential Information. As noted above, in August 2023, McQueary as CEO and Nunn as COO each executed with ZymeFlow (by a corporate predecessor involved in the merger with ULI) (i) an Employment Agreement with confidentiality, non-competition, and non-solicit (customer and employees) provisions, and (ii) a separate Restrictive Covenant Agreement also with confidentiality, non-compete, and non-solicit provisions.[2]

17. In their Employment Agreement and Restrictive Covenant Agreement, McQueary and Nunn agreed that during their employment and after the termination of their employment, they

[2] McQueary and Nunn's executed Restrictive Covenant Agreements are attached hereto as Exhibits 5 and 6, respectively.

shall not "either directly or indirectly, disclose, divulge, impart, or reveal to any person or company … Proprietary Information, except in the proper course of your duties to the Company or as required by law." The definition of Proprietary Information in the agreements is expansive and detailed and includes, relevant here:

- the company's trade secrets, know-how, techniques, and information received from clients;
- technical information about products, processes, and suppliers obtained through observation or examination of information;
- marketing information, including customer names, requirements, product and services, prices, margins, and costs;
- confidential product plans; and
- personnel information, including employee compensation.

18. The terms of McQueary and Nunn's Restrictive Covenant Agreements provide that for three years after they are no longer employed by the company they cannot:

- compete with ZymeFlow;

> (i) For the term of your employment, and for a period of three (3) years commencing on the date you are no longer employed by the Company ("Termination Date") and within any Territory, you will not be employed in, or carry on for your own account or for any other person, whether directly or indirectly, or be a director of any company engaged in any
>
> business which is in competition of the Company or any affiliate Company being carried on by such company at the Termination Date.

- solicit any person who was a ZymeFlow customer within the last year of their employment;

> (ii) For the term of your employment, and for a period of three (3) years commencing on the Termination Date, you will not (either on your own behalf or for or with any other person), whether directly or indirectly, canvass or solicit in competition with Company or any affiliate Company the custom of any person who at any time during the last one (1) year of your service with the Company was a customer or client of, or in the habit of dealing with, the Company or any affiliate Company and in respect of which you had access to Confidential Information or with whose custom or business you were personally concerned.

- entice or try to entice away from ZymeFlow its employees; and/or

> (iii) For the term of your employment, and for a period of three (3) years commencing on the Termination Date, you will not (either on your own behalf or for or with any other person), entice or try to entice away from the Company or any affiliate Company any person who was an employee, director, officer, agent, consultant or associate of such company at any time during your last six (6) months of service with the Company and with whom you had worked closely at any time during that period.

- entice or try to entice away from ZymeFlow any customers, distributor, or supplier of ZymeFlow.

> (iv) For the term of your employment, and for a period of three (3) years commencing on the Termination Date, you will not (either on your own behalf or for or with any other person), entice or try to entice away from the Company or any affiliate Company, or persuade to cease doing business with the Company or any affiliate Company or seek to reduce the amount of business given to the Company or any affiliate Company, of any customers, distributor or supplier of the Company or any affiliate Company.

19. ZymeFlow also includes confidentiality provisions in its customer agreements, such as the following:

> 2. Scope of Confidential Information. Confidential Information protected by this Agreement shall mean all information disclosed by ZYMEFLOW to **Client or by Client to ZYMEFLOW**, including all trade secrets, proprietary information, and other data, know-how, inventions, ideas, or discoveries of ZYMEFLOW or Client, which data may further include, but is not limited to, developmental, technical, marketing, sales, operating, personal, performance, cost, equipment and procedures, quality control procedures, chemical equations, chemical processes, business or process information of ZYMEFLOW or Client, regardless of the medium of disclosure. Confidential Information shall further specifically include, without limitation: any designs, drawings, blueprints, schematics, circuit diagrams, flow charts, sketches, tests, reports, models, prototypes, manuals, parts, tables of operating conditions, chemical compositions, chemical formulas and the like and all other knowledge relating to Zyme-Flow®, CatZyme™ Zyme-Ox®, HOB®, Rezyd-X®, Rezyd-HP™ Zopar™, Tank-Zyme™, Zyme-HT™, Quick-Zyme®, Sweet-Solve™, Quick-Ox™, Quick-Ox Plus™ and the like. Zyme-Flow®, CatZyme™ Zyme-Ox®, HOB®, Rezyd-X®, Rezyd-HP™ Zopar™, Tank-Zyme™, Zyme-HT™, Quick-Zyme®, Sweet-Solve™, Quick-Ox™, and Quick-Ox Plus™, and FastEntry™ are trademarks or registered trademarks of ZYMEFLOW in the United States and other countries.

20. Further, ULI, ZymeFlow's corporate predecessor, also sought to protect its Confidential Information in at least two lawsuits—*Johnathan Walsh v. United Laboratories International, LLC*, Cause No. 2016-12190, In the 215th Judicial District Court of Harris County, Texas and *United Laboratories International, LLC v. Novo World Technologies, Inc., et al.*, Cause No. 2009-44762, In the 151st Juridical District Court of Harris County, Texas.

21. In these lawsuits, ULI demonstrated that its Confidential Information was a trade secret to assert claims under the Texas Uniform Trade Secrets Act and to enforce restrictive

covenants. ULI sought injunctive relief in both lawsuits. Significantly, Defendants McQueary and Nunn provided sworn testimony in the lawsuits about the Confidential Information and why it is a trade secret entitled to protection.

### C. McQueary and Nunn Had Detailed Knowledge of ULI (Now ZymeFlow) Confidential Information

22. McQueary and Nunn's prior testimony in support of ULI's lawsuits to protect its (now ZymeFlow's) Confidential Information and trade secrets also demonstrates that McQueary and Nunn originated, developed, and had knowledge of a great majority of the Confidential Information. Given their positions at ULI and ZymeFlow, McQueary and Nunn were in the best possible position to know, develop, access, exploit, and repurpose Plaintiff's most sensitive Confidential Information, including product-related know-how, application processes, customer requirements, experiential knowledge derived from years of field work, and strategic information concerning the products sourced from United Laboratories and related competing formulations.

23. For example, as he describes in his Solvn website bio, at ULI and ZymeFlow McQueary was responsible for "driving innovation in process decontamination and industrial services" and "deliver[ing] engineering solutions across more than 60 countries," and that he had "deep experience across refining, petrochemicals and LNG, [] combin[ing] strategic vision with execution discipline—guiding organizations to scale, innovate, and consistently deliver long-term value to clients worldwide." *See* https://solvnes.com/#team.

24. Similarly, Nunn's knowledge of ZymeFlow's Confidential Information is reflected in her description of her "extensive experience across energy services and industrial operations," and that she "played key roles in companies specializing in hydrocarbon cleaning, decontamination, and industrial maintenance—bringing strong governance, financial discipline, and strategic oversight to complex, high-value projects." *See* https://solvnes.com/#team.

25. What McQueary and Nunn are describing to promote Solvn and its capabilities are the fundamentals of ZymeFlow's Confidential Information developed at ULI/ZymeFlow. When coupled with the Confidential Information about the chemical decontaminants, Solvn, McQueary, and Nunn are in a position to operate Solvn as a direct competitor to hurt ZymeFlow.

### D. McQueary and Nunn Leave ZymeFlow and then Create Solvn to Compete with ZymeFlow

26. ZymeFlow terminated McQueary's employment as its CEO on May 28, 2024, writing to him in his termination letter that the board of directors had "lost confidence and trust in [his] management of the ZymeFlow business." Ex. 7, ZymeFlow Termination Notice to McQueary. Nunn resigned from ZymeFlow in October 2024. In early 2026, McQueary and Nunn co-founded Solvn, using their detailed knowledge of ZymeFlow's Confidential Information to create Solvn as a direct competitor to, if not a wholesale recreation of, ZymeFlow to provide global decontamination services in the energy industry.

27. Solvn is offering the same services as ZymeFlow, targeting the same industries as ZymeFlow, and touting as its cornerstone qualitative and competitive advantage an array of chemical-based products from United Laboratories that compete with ZymeFlow and its products, which is contrary to and an interference with the terms of the Supply and Service Agreement. Indeed, the products Solvn advertises on its website include products that are "competing products" to the "Products" identified in the Service and Supply Agreement. For example, what appears to be Solvn's principal decontamination product—SolvNPrime—competes with ZymeFlow's UN657, which is a "Product" under the Service and Supply Agreement.

28. McQueary is listed as the sole Director of Solvn on its Certificate of Formation dated March 18, 2026. Solvn's website, www.solvnes.com, explains that its business is exactly what ZymeFlow (www.zymeflow.com) does:







29. Solvn's website also lists its services, which are the same as ZymeFlow:

| Solvn Services - https://solvnes.com/#services | ZymeFlow Services - https://www.zymeflow.com/services |
|---|---|
| Decontamination Services | Chemical Decontamination Process |
| Turnaround Planning & Project Engineering | Project Management and Engineering |
| Heat Exchanger Performance Restoration | Reactor Cleaning |
| Effluent Management | Effluent Management |
| Online Cleaning | Online and Offline Cleaning |
| | Pre-Commissioning and Passivation |

30. Further, the sectors or industries Solvn targets are the same as ZymeFlow:

| Solvn Sectors - https://solvnes.com/#sectors | ZymeFlow Industries - https://www.zymeflow.com/industries |
|---|---|
| Petrochemical | Petrochemical Industry |
| Refining | |
| LNG | Gas Processing |
| Offshore & Marine | Specialty Markets - offshore units |
| Terminals & Storage | Technical Tank Cleaning |

31. At the center of Solvn's business model is the chemistry in products that Solvn claims are developed by United Laboratories. Solvn claims on its website that through collaboration with United Laboratories, it has a proprietary chemical platform that "incorporates more than four decades of field experience across thousands of successful projects worldwide." *See* https://solvnes.com/#chemistry.




As noted above, what Defendants Solvn, McQueary, and Nunn are referring to is the Confidential Information that was developed when McQueary and Nunn were at ULI/ZymeFlow.

32. McQueary and Nunn also both publicly boast on LinkedIn of their creation of Solvn and are attempting to associate their new venture with Solvn with their prior experience and knowledge (i.e., the Confidential Information ) from ZymeFlow.




* * *




33. And they restate their experience and purported credentials gained through ZymeFlow on the Solvn website, at https://solvnes.com/#team:






## E. SOLVN WAS FOUNDED ON ZYMEFLOW'S CONFIDENTIAL INFORMATION, AND MCQUEARY AND NUNN ARE VIOLATING THEIR CONFIDENTIALITY, NON-COMPETE, AND NON-SOLICITATION OBLIGATIONS

34. McQueary and Nunn's creation of and work at Solvn unequivocally violates their enforceable contractual and common law confidentiality, non-compete, and non-solicitation obligations.

35. As demonstrated by Solvn's website, McQueary and Nunn are using "Proprietary Information" of ZymeFlow, which is subsumed in its Confidential Information defined above, for the benefit of Solvn, and is a breach of their confidentiality obligations. McQueary and Nunn were not peripheral employees who merely left Plaintiff to join a competitor. They were Plaintiff's Chief Executive Officer and Chief Operating Officer and, together, formed Solvn, a direct competitor of Plaintiff that advertises on its website the same products and services as Plaintiff.

36. Given their positions at ZymeFlow, McQueary and Nunn were in the best possible position to know, access, exploit, and repurpose Plaintiff's most sensitive Confidential Information and trade secrets, including product-related know-how, application processes, customer requirements, experiential knowledge derived from years of field work, and strategic information concerning the products sourced from United Laboratories and related competing formulations.

37. Specifically, as demonstrated by their website and public statements, and otherwise on information and belief and in the absence of any other rational explanation, McQueary and Nunn are using their knowledge of (i) ZymeFlow's Products (originally from United Laboratories) and related competing products, (ii) ZymeFlow's experiential knowledge base from ZymeFlow's work and services for its customers that provides expertise on processes for the application of Products (and by Solvn as competing products) in different contexts, and (iii) the identity of customers and their requirements for their unique applications. As discussed above, all of the foregoing is ZymeFlow's Confidential Information.

38. It is also obvious that McQueary and Nunn breached their non-competition obligations by (i) their creation of Solvn as a business in competition with ZymeFlow; and (ii) their efforts to develop Solvn as a business that competes with ZymeFlow.

39. As for the non-solicitation obligations, on information and belief, McQueary and/or Nunn are enticing for employment at Solvn key ZymeFlow personnel, including salespersons, project specialists, and chemists. Also, on information and belief, Solvn hired two former ZymeFlow employees with critical knowledge about international operations and petrochemical applications that remain subject to restrictive covenants.

## V. CAUSES OF ACTION

### A. COUNT I - VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *ET SEQ.* (AGAINST DEFENDANTS SOLVN, MCQUEARY, AND NUNN)

40. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

41. Plaintiff ZymeFlow's Confidential Information described above and throughout constitutes "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods,

techniques, processes, procedures, programs, or codes[.]" The Confidential Information constitutes Plaintiff's "Trade Secrets" as defined in the Defend Trade Secrets Act. *See* 18 U.S.C. § 1839(3).

42. For the purposes of Plaintiff's claims herein, Plaintiff's trade secrets at issue shall be referred to as "Confidential Information and Trade Secrets."

43. Plaintiff ZymeFlow engages in interstate commerce and owns the Confidential Information and Trade Secrets. As discussed herein, Plaintiff's Confidential Information and Trade Secrets are not readily ascertainable through proper means by a competitor such as Defendant Solvn or its principals and founders, Defendants McQueary and Nunn. Plaintiff's Confidential Information and Trade Secrets were not and are not publicly known or accessible.

44. As discussed above, to protect its Confidential Information and Trade Secrets, Plaintiff utilizes password protected systems and other electronic security measures that restrict access from unauthorized individuals. To further protect its Confidential Information and Trade Secrets, Plaintiff requires its employees, including previously McQueary, Nunn, and other employees, to execute agreements containing confidentiality and non-disclosure provisions to work for Plaintiff.

45. Plaintiff also protects its Confidential Information and Trade Secrets through the use of electronic account security measures such as unique user identification and passwords. A ZymeFlow employee such as McQueary and Nunn when they were employed, for example, would be required to input a unique user ID and password to access electronic systems housing Plaintiff's Confidential Information and Trade Secrets. As discussed herein, Plaintiff's corporate predecessors, with the active involvement and sworn testimony of Defendants McQueary and Nunn, have sought through lawsuits to protect its Confidential Information and Trade Secrets.

Plaintiff therefore took reasonable measures to preserve the confidentiality of its Confidential Information and Trade Secrets that were available to McQueary and Nunn in their capacity as officers and employees of ZymeFlow. *See* 18 U.S.C. § 1839(3).

46. Plaintiff's Confidential Information and Trade Secrets derive for Plaintiff independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the Confidential Information and Trade Secrets.

47. Defendants McQueary and Nunn owed and still owe Plaintiff a duty to (i) maintain the secrecy of the Confidential Information and Trade Secrets and (ii) limit its disclosure. Defendants McQueary and Nunn acquired knowledge of the Confidential Information and Trade Secrets in their capacities as officers and employees of Plaintiff. Further, Solvn acts through its officers and employees and is charged with the knowledge and actions of McQueary and Nunn as its principals, officers, and employees. Thus, because McQueary and Nunn are officers and employees of Solvn, Solvn knew or had reason to know that the knowledge of the Confidential Information and Trade Secret was (i) derived from persons (McQueary and Nunn) who used improper means to acquire the Confidential Information and Trade Secrets, (ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the Confidential Information and Trade Secrets or limit the use of that information, or (iii) derived from or through McQueary and Nunn who owed and owe a duty to ZymeFlow to maintain the secrecy, or limit the use, of the Confidential Information and Trade Secrets.

48. Defendants' misappropriation of the Confidential Information and Trade Secrets caused Plaintiff to suffer actual losses, including the expenses Plaintiff has incurred to investigate Defendants' misappropriation and take remedial actions. Further, on information and belief,

Defendants McQueary and Nunn disclosed or used the Confidential Information and Trade Secrets to benefit themselves and Solvn, a direct competitor, that has made public statements demonstrating it is presently misappropriating the same. Defendants' conduct caused—and continues to cause—Plaintiff to be subject to unfair competition in the marketplace and allowed Defendant Solvn, and Defendants McQueary and Nunn as principals and presumed direct or indirect owners of Solvn, to obtain an unfair advantage in competing with Plaintiff. Plaintiff seeks compensation for its damages in the amount of all such actual losses. *See* 18 U.S.C. § 1836(b)(3)(B)(i)(I).

49. Plaintiff also seek damages for unjust enrichment caused by Defendants Solvn, McQueary, and Nunn's misappropriation for amounts that are not addressed in computing the damages for actual losses. The Confidential Information and Trade Secrets that Defendants continue to possess were the product of substantial investments by Plaintiff, and Defendants are unjustly enriched by the misappropriation of that information. Plaintiff is entitled to alternative or additional damages measured by the imposition of liability for a reasonable royalty for Defendants' unauthorized disclosure or use of the Confidential Information and Trade Secrets. *See* 18 U.S.C. § 1836(b)(3)(B)(i)(II), (ii).

50. Defendants McQueary and Nunn willfully and maliciously misappropriated the Confidential Information and Trade Secrets. Plaintiff therefore seeks an award of exemplary damages in an amount of two times the amount of damages awarded as described in the foregoing paragraph, together with reasonable attorneys' fees. *See* 18 U.S.C. § 1836(b)(3)(C) and (D).

51. Plaintiff also seeks an injunction to prevent any actual or threatened misappropriation, on such terms as the Court deems reasonable, requiring affirmative actions to

be taken to protect the Confidential Information and Trade Secrets. *See* 18 U.S.C. § 1836(b)(3)(A)(i), (ii), (iii).

## B. COUNT II - VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT (AGAINST DEFENDANTS SOLVN, MCQUEARY, AND NUNN)

52. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

53. Defendants' misappropriation of Plaintiff's Confidential Information and Trade Secrets as described in Count I also violates the Texas Uniform Trade Secrets Act ("TUTSA").

54. As set forth above, Plaintiff's Confidential Information and Trade Secrets that were taken and used by Defendants constitute trade secrets under Texas law.

55. As set forth above, Plaintiff's Confidential Information and Trade Secrets have been compiled and/or developed by Plaintiff over many years and at great expense. This information is kept confidential and safeguarded by Plaintiff and is not readily ascertainable and/or cannot be obtained readily and by proper means by third parties from outside sources. Plaintiff's Confidential Information and Trade Secrets are extremely valuable to Plaintiff and provides it with a competitive advantage in the marketplace.

56. As set forth above, Plaintiff provided its Confidential Information and Trade Secrets to Defendants McQueary and Nunn under the protections of their Employment Agreements and Restrictive Covenant Agreements. Defendants McQueary and Nunn were prohibited from using or disclosing any of Plaintiff's Confidential Information and Trade Secrets for any purpose outside of their work responsibilities for Plaintiff. Defendants McQueary and Nunn therefore owed, and continue to owe, Plaintiff ZymeFlow a duty to maintain the secrecy of such information. Defendants improperly utilized Plaintiff's Confidential Information and Trade Secrets, harming Plaintiff in the process.

57. For these reasons, Defendants have violated and continue to violate the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Section 134A.001, *et seq*. Defendants' prior, current, and continued/threatened unlawful misappropriation of Plaintiff's Confidential Information and Trade Secrets is wrongful, and the utilization of such information entitles Plaintiff to recover both injunctive relief and monetary damages.

58. Defendants' willful, malicious, and unlawful misappropriation and apparent disclosure and use of Plaintiff's Confidential Information and Trade Secrets has directly and proximately caused, and continues to directly and proximately cause, substantial and irreparable harm to Plaintiff for which there is no adequate remedy at law. Defendants have further been unjustly enriched as a result of their wrongful conduct.

59. Plaintiff has and/or will be damaged by Defendants' misappropriation of Plaintiff ZymeFlow's Confidential Information and Trade Secrets and has suffered actual, incidental, and consequential damages and injury that cannot be measured by any certain pecuniary standard. Because Defendants' misappropriation of Plaintiff's Confidential Information and Trade Secrets is and was willful and malicious, Plaintiff is also entitled to exemplary damages in addition to all actual damages and equitable relief. Plaintiff is further entitled to recover its reasonable and necessary attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code § 134A.005. Plaintiff is also entitled to seek and recover pre- and post-judgment interest and court costs from Defendants.

### C. COUNT III - TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND BUSINESS RELATIONSHIPS (AGAINST DEFENDANTS SOLVN, MCQUEARY, AND NUNN)

60. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

61. ZymeFlow has developed advantageous business relationships and enjoys a prospective economic advantage with its suppliers and customers in the chemical decontamination

cleaning and related products and services market. It continues to have an expectancy of renewal business from its suppliers, customers, and business accounts.

62. By the acts alleged herein, including the creation of Solvn as a direct competitor to offer the same services in the same industries or sectors using knockoffs of ZymeFlow's products and, according to Solvn's website, sourcing chemicals and products from United Laboratories, Defendants have intentionally interfered with ZymeFlow's supply and customer relationships without business justification. As a direct and proximate consequence thereof, ZymeFlow has been damaged.

63. ZymeFlow has suffered, and absent injunctive relief will continue to suffer, irreparable damage to its business interest, including customer and business relationships and goodwill, which is not fully compensable by money damages, and ZymeFlow is therefore entitled injunctive relief as well as any other remedies it may prove at trial, including damages for Defendants' conduct to date.

### D. COUNT IV - TORTIOUS INTERFERENCE WITH CONTRACT (AGAINST DEFENDANTS SOLVN, MCQUEARY, AND NUNN)

64. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

65. By virtue of McQueary and Nunn's former employment and position as officers of ZymeFlow and their current employment and position as officers or directors of Solvn, Defendants Solvn, McQueary, and Nunn were aware of the contractual relationship between ZymeFlow and United Laboratories created by the Supply and Service Agreement.

66. The Restricted Activities provision in the Supply and Service Agreement prevents United Laboratories from selling Products or competing products to ZymeFlow's Heritage Customers, which includes oil refineries, chemical plants, petrochemical plants, gas plants, paper

mills, pulp mills, and power plants. Based on the statements on Solvn's website, Solvn, acting at the direction of McQueary and Nunn, is obtaining from United Laboratories what are competing products in violation of the Restricted Activities provision.

67. On information and belief, and based on Defendants' public statements on the Solvn website, the above-described actions of Defendants Solvn, McQueary, and Nunn induced and/or caused United Laboratories to breach its contractual obligations to ZymeFlow. There is and was no justification or other excuse for these actions.

68. As a result of Defendants' wrongful actions that induced United Laboratories to breach its obligations to Plaintiff ZymeFlow, Plaintiff has incurred and continues to incur injuries that are not fully compensable by money damages, and Plaintiff is therefore entitled to injunctive relief as well as any other remedies it may prove at trial, including damages for Defendants' conduct to date.

### E. COUNT V – CIVIL CONSPIRACY (AGAINST DEFENDANTS SOLVN, MCQUEARY, AND NUNN)

69. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

70. Defendants Solvn, McQueary, and Nunn constitute a combination of two or more persons who reached an agreement to conspire and act in concert to induce United Laboratories to breach the Service and Supply Agreement between ZymeFlow and United Laboratories.

71. By virtue of McQueary and Nunn's former employment and position as officers of ZymeFlow and their current employment and position as officers or directors of Solvn, Defendants Solvn, McQueary, and Nunn were aware of the contractual relationship created by the Supply and Service Agreement between ZymeFlow and United Laboratories. They were also aware that the Restricted Activities provision in the Supply and Service Agreement prevents United Laboratories

from selling Products or competing products to ZymeFlow's Heritage Customers, which includes oil refineries, chemical plants, petrochemical plants, gas plants, paper mills, pulp mills, and power plants. Based on the statements on Solvn's website, Solvn, acting at the direction of McQueary and Nunn, is obtaining from United Laboratories what are competing products in violation of the Restricted Activities provision.

72. The object of the conspiracy is/was to (i) interfere with ZymeFlow's contractual relationship and expectation of future economic benefits with United Laboratories and (ii) obtain the benefit of obtaining competing products from United Laboratories to sell to customers of Solvn, notwithstanding Defendants' knowledge that such conduct would interfere with and induce breaches of the Supply and Service Agreement.

73. In furtherance of the conspiracy, Defendants committed overt acts, including, but not limited to, participating in, communicating with, and coordinating with one another—United Laboratories—and others concerning the effort to obtain competing products from United Laboratories for sale to Solvn's customers.

74. Upon information and belief, Defendants Solvn, McQueary, and Nunn knowingly provided substantial assistance to accomplish the object of the conspiracy and to secure the benefits of the breach and interference with the Supply and Service Agreement.

75. The acts undertaken by Defendants Solvn, McQueary, and Nunn were willful, intentional, and done pursuant to the common scheme and design described herein.

76. As a direct and proximate result of the conspiracy and the overt acts taken in furtherance thereof, including the tortious interference with the Supply and Service Agreement alleged above, ZymeFlow has suffered damages.

77. By reason of the foregoing, Defendants Solvn, McQueary, and Nunn are jointly and severally liable to ZymeFlow for all actual, consequential, and incidental damages caused by their conspiracy, together with attorneys' fees, costs, and pre- and post-judgment interest in an amount to be determined at trial.

### F. COUNT VI - BREACH OF COMMON LAW AND CONTRACTUAL CONFIDENTIALITY DUTIES (AGAINST MCQUEARY AND NUNN)

78. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

79. The conduct and actions of McQueary and Nunn, as described herein, were and are violations of their common law and contractual duties and obligations to Plaintiff, including those owed as a result of their positions at ULI and ZymeFlow, or alternatively their Employment Agreements and Restrictive Covenant Agreements. They possess Confidential Information and Trade Secrets about ZymeFlow, are in a position to use the information, and, based on their statements, are seeking to actually use and benefit from the information to their and Solvn's advantage to actively compete against ZymeFlow to its detriment.

80. Plaintiff seeks all available legal and equitable relief available including preliminary and permanent injunctive relief, and damages proved at trial.

### G. COUNT VII – BREACH OF FIDUCIARY DUTY (AGAINST DEFENDANTS MCQUEARY AND NUNN)

81. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

82. The conduct and actions of McQueary and Nunn, as described herein, were and are a violation of the fiduciary duties they owe to ZymeFlow as former employees, for which Plaintiff seeks all remedies, including damages, legally available for such breach of fiduciary duty.

83. Moreover, because the conduct was engaged in intentionally and with wanton disregard for its rights and interests, Plaintiff seeks an award of exemplary damages.

84. Plaintiff further seeks all equitable relief available to it, including preliminary and permanent injunctive relief.

### H. Count VIII – Breach of Contract – Restrictive Covenant Agreements (Against Defendants McQueary and Nunn)

85. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

86. As referenced above, the Restrictive Covenant Agreement of McQueary and Nunn have the following provisions that continue for three years after their termination from ZymeFlow:

- Non-Compete provision – they would not be employed in or be a director of any company engaged in a business that is in competition with ZymeFlow within the states of the United States, Canadian provinces, and foreign countries where ZymeFlow sells products or performs services.

- Non-Solicitation of customers and suppliers, generally – they would not entice or try to entice away from ZymeFlow, or persuade to cease doing business with ZymeFlow or seek to reduce the amount of business given to ZymeFlow, any customers or supplier of ZymeFlow.

- Non-Solicitation of customers provision tied to confidential information – they would not directly or indirectly solicit in competition with ZymeFlow any person who in the last year of their service with ZymeFlow was a customer or client of ZymeFlow and for whom they had access to confidential information about or whose business they were personally concerned.

- Non-Solicitation of employees provision – they will not entice or try to entice away from ZymeFlow any employee, director, officer, agent, consultant at any time during the last 6 months of their service at ZymeFlow and with whom they had worked closely at any time during that period.

87. The primary purpose of these provisions was to protect ZymeFlow's interests arising from the fact that McQueary and Nunn would (i) obtain Confidential Information and Trade Secrets of ZymeFlow and (ii) have influence over the customers, clients, and employees of

ZymeFlow. ZymeFlow thus wanted to reasonably protect ZymeFlow's legitimate business interests, including but not limited to (i) the preservation of ZymeFlow's Confidential Information and Trade Secrets, which are trade secrets, confidential information, and/or proprietary information; and (ii) the retention of ZymeFlow's customers, customer contact, and employees.

88. The scope of the Non-Compete provision is reasonable in duration and geographic scope.

89. As set forth herein, McQueary and Nunn formed Solvn on or about March 18, 2026 — within three years of their termination from ZymeFlow in 2024. As amply demonstrated above, Solvn is a competitor of ZymeFlow under the Non-Compete, as Solvn is engaged in or purports to be engaged in providing chemical decontamination cleaning and degassing products and services in the United States and internationally. McQueary and Nunn have accordingly breached the Non-Compete provision of the Restrictive Covenant Agreement.

90. As set forth herein, McQueary and Nunn directly and indirectly and through Solvn are actively attempting to persuade customers for chemical decontamination products and services to do business with Solvn, and are, on information and belief, targeting ZymeFlow customers. They are also actively doing business with United Laboratories, who is a supplier of ZymeFlow. These efforts are, on information and belief, intended to either cause customers and suppliers to cease doing business with ZymeFlow or reduce its business.

91. As set forth herein, McQueary and Nunn directly and indirectly through Solvn are actively enticing and trying to entice from ZymeFlow its employees that McQueary and Nunn had worked closely with during the last 6 months of their service at ZymeFlow. In short, Solvn, McQueary, and Nunn are actively poaching ZymeFlow's employees—5 have left already

(including Carolina Bautista, Arshad Azad, Mushtaq Nayazi, and Sabnesh Vazhipokil), and 7 other employees have been solicited or enticed.

92. As a direct and proximate result of McQueary and Nunn's breaches of their Restrictive Covenant Agreements, ZymeFlow has sustained and will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be determined at trial.

93. If McQueary and Nunn are not enjoined, they will continue to breach their Restrictive Covenant Agreements, particularly the Non-Compete provision and the Non-Solicitation of employees provision. Because ZymeFlow's remedy at law is inadequate, it seeks, in addition to damages, injunctive relief to prevent any further damage to its business interests.

## VI. INTEREST

94. Plaintiff is entitled to pre- and post-judgment interest at the highest rate allowed under the law, for which Plaintiff seeks compensation.

## VII. CONDITIONS PRECEDENT

95. Plaintiff complied with all required conditions precedent in bringing its claims. All conditions precedent have occurred, have been met, or are excused.

## VIII. REQUEST FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff ZymeFlow, Inc. prays that Defendant Solvn Energy Solutions, Inc., Thomas P. McQueary, and Jacqueline Nunn be cited to appear and answer herein and that upon the trial of this matter, the Court enter orders and a Final Judgment in favor of Plaintiff against Defendants for the following:

a. enter judgment against Defendants for all losses and actual, special, consequential, economic, out-of-pocket, and other damages and losses incurred by Plaintiff in an amount determined by the trier of fact;

b. enter judgment against Defendants for exemplary damages as permitted by the DTSA and the TUTSA;

c. enter judgment against Defendants for exemplary damages in an amount determined by the trier of fact as permitted under federal and Texas law;

d. award Plaintiff equitable relief, including a preliminary injunction;

e. upon final trial, enter judgment against Defendants for full permanent injunctive relief as permitted under federal and Texas law;

f. actual damages;

g. exemplary damages;

h. court costs;

i. reasonable and necessary attorneys' fees pursuant to, but not limited to, the Texas Civil Practice & Remedies Code;

j. award pre- and post-judgment interest at the highest rates allowed by law; and

k. all other relief to which Plaintiff is legally or equitably entitled.

Dated: August 13, 2026

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

/s/ *Neil D. Kelly*
**Neil D. Kelly** (*Attorney-in-Charge*)
Southern District I.D. No. 15995
State Bar No. 00784380
neilkelly@hunton.com
**Holly H. Williamson**
Southern District I.D. No. 8591
State Bar No. 21620100
hwilliamson@hunton.com
**Katrina A. Schydlower**
Southern District I.D. No. 3898108
State Bar No. 24143389
kschydlower@hunton.com
600 Travis St., Suite 4200
Houston, Texas 77002
(713) 220-4200 (Telephone)
(713) 220-4285 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**